IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Respondent,

v.                               No.    CV 16-0648 MV/GBW
                                               CR 12-2229 MV

SHANNON D. CONCHO,

    Petitioner.

## ORDER OVERRULING PETITIONER'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, AND DENYING PETITIONER'S § 2255 MOTION

This matter comes before the Court on Petitioner's objections (*doc. 12*)[1] to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (*doc. 8*) recommending that the Court deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (*doc. 1*). Being fully advised, the Court will overrule Petitioner's objections, adopt the PFRD, and deny Petitioner's § 2255 motion.

I.    **BACKGROUND**

On February 27, 2014, Petitioner pled guilty to the offense of Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to and in Furtherance of a

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-648-MV-GBW. Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 12-CR-2229-MV. For filings made on both dockets, only the civil docket number is given.

Crime of Violence in violation of 18 U.S.C. § 924(c). *Cr. docs. 30, 31.* The statute Petitioner pled guilty to violating provides in pertinent part:

> [A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
> . . .
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years[.]

18 U.S.C. § 924(c)(1)(A). The same statute defines "crime of violence" as:

> an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The "crime of violence" underlying Petitioner's § 924(c) offense was Assault with a Dangerous Weapon in violation of 18 U.S.C. § 1153 and § 113(a)(3), as charged in Counts 1-3 of the indictment. *Cr. doc. 2* at 2-3. In his plea agreement, Petitioner stipulated to the facts that he "knowingly used, carried, and brandished a firearm . . . during and in relation to, and possessed and brandished said firearm in furtherance of, a crime of violence for which I may be prosecuted in a court of the United States, to wit: Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113." *Cr. doc. 30* at 3.

2

Prior to sentencing, the United States Probation Office prepared a presentence report (PSR), which concluded in pertinent part that the offense of conviction automatically carried a minimum seven-year (84-month) term of imprisonment pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). PSR ¶ 80; *see also* U.S.S.G. § 2K2.4(b) (2013) (providing that the applicable guideline sentence for a § 924(c) offense is the minimum term of imprisonment required by statute). In accordance with this understanding of the applicable minimum term of imprisonment, Petitioner, in his plea agreement, stipulated to a term of 84 months of imprisonment. *Cr. doc. 30* at 4. At sentencing, the Court accepted the plea agreement and sentenced Petitioner to 84 months, or seven years, of imprisonment followed by two years of supervised release.[2] *Cr. docs. 36, 39*.

Following sentencing, in compliance with the plea agreement, the United States moved to dismiss the remaining four counts of the five-count indictment, which included three counts of Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3) and one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). *See cr. doc. 2* at 1-2; *cr. doc. 30* at 7; *cr. doc. 37*. The Court granted the motion. *Cr. doc. 38*.

On June 23, 2016, Petitioner filed the present motion pursuant to 28 U.S.C. § 2255, seeking to have his conviction vacated on the basis that the federal offense of Assault

---

[2] The Court also imposed special conditions on Petitioner as part of his sentence, including restitution to one of the victims whose property was damaged during commission of the offense, completion of a 500-hour drug program, work with the Probation Office Reentry Team upon release from custody, and participation in a community-based grief-management program. *See cr. doc. 36*.

with a Dangerous Weapon under 18 U.S.C. § 113(a)(3) is no longer a "crime of violence" under 18 U.S.C. § 924(c)(3) in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015). *Doc. 1* at 2, 6-8. Therefore, Petitioner argues that if sentenced today, he would not qualify for a conviction pursuant to § 924(c)(1)(A). *Id.* at 3.

*Johnson* struck down as unconstitutionally vague the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), which is not the statutory provision underlying Petitioner's conviction. *See* 18 U.S.C. § 924(e)(2)(B). Nonetheless, Petitioner argues that the definition of "crime of violence" in 18 U.S.C. § 924(c)(3) contains a clause (the "substantial risk" clause) that is sufficiently similar to the ACCA's residual clause for the Court to find that the substantial risk clause is also unconstitutionally vague pursuant to *Johnson*.

Thus, Petitioner contends that the *Johnson* decision should be applied retroactively to vacate his conviction of Count 5 of the indictment and to adjust the sentencing guideline range for the four previously dismissed counts to 33-41 months.[3] *Id.* at 9. Consequently, Petitioner argues that he is entitled to resentencing as a matter of due process, as it would be a miscarriage of justice to enforce the 84-month prison

---

[3] Although the petition is not explicit on this point, the Court presumes, based on the relief sought, that Petitioner would expect the four counts that the Court previously dismissed upon motion by the United States to be reinstated in the event his motion is granted and his sentence vacated. The Court further notes that the Magistrate Judge's PFRD contains a more detailed accounting of how Petitioner calculated the otherwise applicable sentencing guideline range of 33-41 months. *See doc. 8* at 3. As the United States does not contest that this would be the applicable sentencing guideline range if the Court were to reinstate Counts 1-4 of the indictment and Petitioner were to plead guilty only to those counts, the Court will not repeat that aspect of the Magistrate Judge's analysis in its entirety but will hereby adopt it without further exposition. *See id.* at 3 n.5.

sentence to which he agreed in light of the significantly lower guideline range that would otherwise be applicable if the other four counts were reinstated and he were to plead guilty to them. *Id.* at 8-9.

The United States responded to Petitioner's § 2255 motion on May 19, 2017, styling its response as a motion to dismiss the petition. *Doc. 7*. The motion to dismiss argued that (1) because *Johnson* does not apply to Petitioner's sentence, his motion is not timely under § 2255(f); (2) Petitioner's waiver of collateral attack contained in his plea agreement should be enforced to bar the petition; and (3) even if *Johnson* does apply to invalidate the "substantial risk" clause of 18 U.S.C. § 924(c)(3)(B), the charge of assault with a dangerous weapon underlying Petitioner's conviction remains a "crime of violence" under the "elements clause" of the same statute. *See* § 924(c)(3)(A).

The Magistrate Judge filed his PFRD on July 19, 2017. *Doc. 8*. First, he recommended that the Court assume without deciding that Petitioner's motion is timely under § 2255(f)(3). *See id.* at 12-13. Second, he recommended that the Court decline to enforce Petitioner's waiver of collateral attack contained in his plea agreement. *Id.* at 13-15. Third, and most significantly, the Magistrate Judge recommended the Court find that Petitioner's offense of assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3) remains a crime of violence under the "elements clause" of § 924(c)(3). *Id.* at 15-24. Therefore, he recommended the Court deny Petitioner's § 2255 motion and grant the United States' motion to dismiss.

Petitioner filed objections to the PFRD on October 2, 2017. *Doc. 12*. Petitioner objects only to the third recommended finding discussed above—that assault with a dangerous weapon remains a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3), regardless of whether *Johnson* applies to invalidate the substantial risk clause of the same provision. *See generally id.* The United States filed no objections.[4]

I. **LEGAL STANDARD APPLICABLE TO OBJECTIONS**

Petitioner's Motion (*doc. 1*) was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). *See doc. 3*. Under that referral provision, the Court's standard of review of a magistrate judge's PFRD is *de novo*. *See* 28 U.S.C. § 636(b)(1)(C). When resolving objections to a magistrate judge's PFRD, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3). The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). When neither party objects to a finding or recommendation, no further review by the district court is required. *See Thomas v. Arn*, 474 U.S. 140, 151-52 (1985). Further, "[i]ssues raised for the

---
[4] The United States filed a Response to Petitioner's Objections *(doc. 13)*, which does not affect the substance of this Court's Opinion. Accordingly, Petitioner's Motion to Strike the government's response as untimely *(doc. 14)* is denied as moot.

6

first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## II. ADOPTION OF FINDINGS AND RECOMMENDATIONS WITHOUT OBJECTIONS

Neither party objected to the Magistrate Judge's recommendations that (1) the Court should assume, without deciding, that *Johnson* applies to invalidate the "substantial risk" clause contained in 18 U.S.C. § 924(c)(3)(B), making Petitioner's motion timely under 28 U.S.C. § 2255(f)(3), and (2) Petitioner's collateral attack waiver should not be enforced to bar the present petition. The Court agrees with these proposed findings and hereby adopts them as its own.

Therefore, the only question left before the Court is whether Petitioner's offense of assault with a dangerous weapon constitutes a "crime of violence" under the elements clause contained in 18 U.S.C. § 924(c)(3)(a)—that is, whether it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." If so, then Petitioner was properly convicted of Count 5 of the indictment, as he used, carried, possessed, and brandished a firearm during, in relation to, and in furtherance of a crime of violence.

## III. ANALYSIS

As discussed above, the elements clause contained in § 924(c) defines as a "crime of violence" any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §

7

924(c)(3)(A). The Supreme Court explained in *Johnson v. United States*, 559 U.S. 133, 140 (2010)[5] that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person." Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 1272. Therefore, in evaluating whether Petitioner's conviction of assault with a dangerous weapon constitutes a crime of violence under the elements clause of § 924(c)(3), the Court must first consider whether the statute defining that offense necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" violent force against the person of another. If so, it is a crime of violence under § 924(c)(3) notwithstanding the substantial risk clause.

Petitioner first objects that the Magistrate Judge "failed to recognize" that an assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) could be committed "by acting in a way that put another in reasonable apprehension of bodily harm and produced serious bodily injury without use of physical force, such as by use of hazardous chemicals or other toxic substances." *Doc. 12* at 2. However, Petitioner's predicate conviction at issue is assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), not assault resulting in serious bodily injury under subsection (a)(6) of the same provision. *See cr. doc. 2*; *cr. doc. 30* at 3. While it is true that the Magistrate

---

[5] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

Judge began his analysis of the offense of assault with a dangerous weapon by first defining the term "assault," as contained in § 113(a), by reference to the common law definition of simple assault, he did not offer any conclusions regarding whether either simple assault or assault resulting in serious bodily injury under § 113(a)(6) qualifies as a crime of violence under the elements clause. This objection is therefore without merit, and the Court overrules it.

Next, Petitioner argues that "almost anything" could qualify as a "dangerous weapon" underlying the offense of assault with a dangerous weapon, including objects such as "walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, cloth[ing] irons, and stink bombs." *Doc. 12* at 2 (quoting *United States v. Tissnolthtos*, 115 F.3d 759, 763 (10th Cir. 1997) and *United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994)). Petitioner further explains that a conviction under § 113(a)(3) could be upheld where such a "dangerous weapon" is merely possessed or displayed during the assault, and where the offender has the intent to cause bodily harm. *Id.* Petitioner thus posits that the act of "[s]etting off a stink bomb" meets the requirements of the statute's minimum culpable conduct without involving the use, attempted use, or threatened use of force "capable of causing physical pain or injury to another person," as required to come within the ambit of 18 U.S.C. § 924(c)(3)(a). The Court rejects this argument for several reasons.

As aptly explained by the Magistrate Judge in his PFRD, setting off a stink bomb

9

could not rise to the level of assault with a dangerous weapon under the statute at issue unless (1) the stink bomb is "capable of being readily operated or wielded by one person to inflict severe bodily harm or injury upon another person," **and** (2) the perpetrator set off the stink bomb with "specific intent . . . and with the desire or wish to bring about a serious bodily injury to the person of another." *See doc. 8* at 17-18; TENTH CIRCUIT COURT OF APPEALS CRIMINAL PATTERN JURY INSTRUCTION 2.09 (2011) (defining "dangerous weapon," as used in 18 U.S.C. § 113(a)(3)); *see also Brundage v. United States*, 365 F.2d 616, 619 (10th Cir. 1966). Any "stink bomb" attack that does indeed meet these requirements would also necessarily involve the use or attempted use of force "capable of causing pain and injury to another person."

Conversely, any use of a typical "stink bomb" that merely emits a foul odor would not meet the applicable definition of an object "capable of being readily operated or wielded . . . to inflict severe bodily harm or injury upon another person," and there would accordingly be no "realistic probability" that the statute would apply to such use. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (the "minimum [culpable] conduct" punished under a given statute must be construed to include only conduct to which there is a "realistic probability, not a theoretical possibility" the state statute would apply.).

Moreover, Defendant's reliance on *Tissnolthtos*, 115 F.3d at 762–63, for the proposition that a stink bomb would qualify as a dangerous weapon under 18 U.S.C. §

10

113 is unavailing for a number of reasons. First, that case dealt with the guidelines definition of "dangerous weapon," which is not identical to the Tenth Circuit pattern definition of the same term in the federal assault statute. *Id.* at 762-63. It is therefore not controlling as to which objects might qualify as "dangerous weapons" as that term is used in 18 U.S.C. § 113(a)(3).

Second, the Tenth Circuit in *Tissnolthtos* was explaining that a piece of firewood was properly classified as a dangerous weapon under the applicable guidelines definition "when it *is used* to inflict serious bodily injury, as it was in this case." *Id.* at 763 (emphasis added). In support, the Tenth Circuit cited to the persuasive authority of *United States v. Dayea*, 32 F.3d 1377, 1379 (9th Cir. 1994), also applying the guidelines definition of "dangerous weapon" and explaining: "courts have found that, in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes . . . and stink bombs." *Id.* (collecting cases). Notably, the *Dayea* court qualified this list of items as only meeting the definition of "dangerous weapon" in the "proper circumstances." Therefore, to the extent that the Ninth Circuit considered a stink bomb a "dangerous weapon" under the guidelines definition at issue, it qualified that categorization by immediately thereafter explaining that it could only be so considered if such an object is used "*in its capacity as a weapon*—that is, us[ed] for the *purpose* of injuring or threatening to injure." *Id.* at 1380.

Additionally, the case on which the Ninth Circuit relied for the proposition that a

11

stink bomb might be a dangerous weapon was *People v. Orlando*, a Michigan Supreme Court case. *See* 9 N.W.2d 893, 894 (Mich. 1943). That case, in turn, dealt with a provision of the Michigan state constitution which enumerated types of items that are admissible as evidence in criminal cases even if unconstitutionally seized by a police officer, including "any [] dangerous weapon or thing." *Id*. at 895. No definition of "dangerous weapon" was provided by either the Michigan constitutional provision applied in *Orlando* or by the court itself in concluding that "[i]n our opinion, a stench bomb, as used in this case, was a dangerous weapon and as such was within the meaning of the proviso of this section of" the state constitution. *Id*. In other words, the definition of "dangerous weapon" in the Michigan Supreme Court case is even further removed from the statute presently at issue than is the guidelines definition of "dangerous weapon."

And, in any event, even if it were to accept *arguendo* that the definition of "dangerous weapon" at issue here matches the definition of "dangerous weapon" under the Michigan constitutional provision at issue in a 74-year-old Michigan Supreme Court case, Petitioner's argument would still fail, because he ignores that a conviction under 18 U.S.C. § 113(a)(3) requires the use of a deadly weapon coupled with the intent to commit bodily harm. *See United States v. Bruce*, 458 F.3d 1157, 1165 n.4 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 999 (2007) ("[t]he elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to

commit bodily harm."); *see also* TENTH CIRCUIT COURT OF APPEALS CRIMINAL PATTERN JURY INSTRUCTION 2.09 cmt. (2011) (instructing courts to apply *Bruce* to determine "how the various subsections of the statute, § 113(a)(1) to (a)(7), relate in terms of lesser-included offenses.").

In sum, the Court finds that it is impossible to (1) knowingly, and with specific intent, (2) "attempt . . . to commit a violent injury upon the person of another," coupled with the "present ability" to do so, (3) while using an object "capable of being readily operated or wielded by one person to inflict severe bodily harm or injury upon another person," (4) "with the desire or wish to bring about a serious injury to the person of the other," without either using or attempting to use physical force that is "capable of causing pain or injury to another person." *Brundage*, 365 F.2d at 619; TENTH CIRCUIT COURT OF APPEALS CRIMINAL PATTERN JURY INSTRUCTION 2.09 (2011); *Johnson I*, 559 U.S. at 140. This conclusion holds true even if the object used by the perpetrator is a stink bomb, although the Court finds it unlikely that any use of a stink bomb could meet the above-listed requirements. Accordingly, Petitioner's second objection is overruled.

Petitioner's final objection is that the Tenth Circuit "has long recognized that, to satisfy the force clause, an element of the offense must 'focus on the means by which an injury occurs (the use of physical force)' rather than 'on the result of a defendant's conduct, i.e., bodily injury.'" *Doc. 12* at 3 (quoting *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005)). He therefore disagrees with the Magistrate Judge's reliance

13

on the Supreme Court decision of *United States v. Castleman*, 134 S. Ct. 1405 (2014), for the conclusion that *Johnson I* "physical force" can be employed indirectly, such as by mailing anthrax to a victim or by poisoning someone's drink. *Id.* at 3-4; *see also doc. 8* at 22-24. Petitioner argues to the contrary that such conduct does not constitute the "use of" physical force, and that *Castleman* is inapposite because it dealt with a statute requiring only common-law "force," which includes even the slightest offensive touching. *See doc. 12* at 3-4.

The Court agrees with the Magistrate Judge's conclusion that *Castleman* is instructive in understanding what type of conduct might qualify as the "use of force" against the person of another. As the Magistrate Judge noted, that opinion explained:

> "[P]hysical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." And the common-law concept of "force" encompasses even its indirect application . . . . [T]he knowing or intentional application of force is a "use" of force. [The defendant] is correct that under *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L.Ed.2d 271 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry . . .[,] no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink." The "use of force" in [the defendant's] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.

134 S. Ct. at 1414–15 (internal citations to defendant's briefing omitted).

Petitioner is correct that *Castleman* addressed the force required under the

14

definition of "misdemeanor crime of domestic violence," in 18 U.S.C. § 922(g)(9), which the Court held to be a lesser amount of force than that required under the *Johnson I* standard. *See id.* at 1409-13. However, the admitted distinction in *degree* between the force required to satisfy the domestic violence offense and that required to satisfy the *Johnson I* standard has no bearing on whether the Supreme Court's analysis regarding whether indirect action can qualify as the *use* of force—in any degree—is applicable here. Indeed, in rejecting the defendant's argument that indirect force cannot constitute "use" of physical force in *Castleman*, the Supreme Court made the point that "[u]nder Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* at 1415. Shooting a victim with a gun undisputedly satisfies the *Johnson I* standard of "force capable of causing pain or injury to another person." Therefore, the *Castleman* Court clearly indicated, by way of this illustrative example, that its analysis as to what constitutes the "use of force" under the domestic violence statute extends to any "use of force," no matter the degree.

Consequently, several circuit courts have looked to *Castleman* when addressing arguments, such as Petitioner's, about whether the *Johnson I* standard of physical force requires such force to be applied directly. Of these, nine have determined that *Castleman* is apposite even when considering statutes that require *Johnson I* "physical force" rather than the lesser force required by the misdemeanor domestic violence

15

statute discussed in *Castleman. See United States v. Love*, No. 15-CR-20098-JAR, 2017 WL 4123301, at *7 nn.50-58 (D. Kan. Sept. 18, 2017) (citing *United States v. Hill*, 832 F.3d 135, 143 (2d Cir. 2016) (relying on *Castleman* to examine what constitutes "physical force" in the § 924(c)(3)(A) elements clause context, which is the question before the Court here); *United States v. Edwards*, 857 F.3d 420, 426 (1st Cir. 2017) (relying on *Castleman* to examine what constitutes "physical force" in the ACCA elements clause context); *United States v. Burns-Johnson*, 864 F.3d 313, 318 (4th Cir. 2017) (same); *United States v. Jennings*, 860 F.3d 450, 458-60 (7th Cir. 2017) (same); *United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017) (same); *United States v. Redrick*, 841 F.3d 478, 484-85 (D.C. Cir. 2016) (same); *United States v. Chapman*, 866 F.3d 129, 132-33 (3d Cir. 2017) (relying on *Castleman* to examine what constitutes "physical force" in the guidelines "crime of violence" elements clause context); *United States v. Haldemann*, 664 F. App'x 820, 822 (11th Cir. 2016) (same); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017) (same)); *but see United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (limiting *Castleman*'s applicability to the context of misdemeanor domestic violence).

    The Court agrees with the great weight of persuasive authority that the analysis from *Castleman* regarding what constitutes the use of "physical force" is controlling even outside the misdemeanor domestic violence context. To the extent that the Tenth Circuit's decision in *Perez-Vargas*[6] suggested that an offense must require that physical

---

[6] The *Perez-Vargas* court, in applying elements clause of the "crime of violence" definition contained in

force be applied directly in order for it to "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," this Court agrees with the numerous other courts which have concluded that *Castleman* limited or abrogated *Perez-Vargas* on this point. *See Love*, 2017 WL 4123301, at *7 (noting that "[a]t least three district courts in the Tenth Circuit, including this Court, have found that *Castleman* abrogates or limits *Perez-Vargas*'s holding" (citing to *Sarracino v. United States*, No. 16-734, 2017 WL 3098262, at *7 (D.N.M. June 26, 2017); *United States v. Breshers*, No. 10-40107, 2017 WL 2378349 at *2 n.2 (D. Kan. June 1, 2017) (unpublished); and *United States v. Pikyavit*, No. 16-CV-00729, 2017 WL 1288559 at *4–7 (D. Utah Apr. 6, 2017) (unpublished), appeal docketed, No. 17-4068 (10th Cir. May 1, 2017))). Therefore, despite the fact that assault with a dangerous weapon can be committed without direct physical contact, such as by poisoning, it nevertheless requires the use or attempted use of "physical force capable of causing pain or injury to another person," meeting the *Johnson I* standard based on the reasoning in *Castleman*.

More importantly, even if the Court were to follow *Perez-Vargas* rather than *Castleman* in determining what constitutes the "use of force," Petitioner's offense of aggravated assault with a deadly weapon is distinguishable from the third degree assault offense at issue in *Perez-Vargas*, and the nature of the distinction dooms

---

U.S.S.G. § 2L1.2, noted that many examples of offenses that require bodily injury to result do not necessarily require the use or threatened use of physical force, listing as examples "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." 414 F.3d at 1286.

Petitioner's argument. Namely, as already discussed, assault with a dangerous weapon requires specific intent: the assault must be "committed knowingly, that is[,] with knowledge as to what the defendant was doing and with the desire or wish to bring about a serious bodily injury to the person of the other." *Brundage*, 365 F.2d at 619. It must be committed "intentionally . . . and with a desire to do bodily harm." *United States v. Tsosie*, 288 F. App'x 496, 501 (10th Cir. 2008) (unpublished).

Therefore, unlike the assault statute discussed in *Perez-Vargas*, which could be satisfied by any knowing, reckless, or criminally negligent conduct resulting in any bodily injury, the federal statute criminalizing assault with a dangerous weapon requires intentional, knowing conduct aimed at bringing about a serious bodily injury to the person of another. Thus, it is not a crime that "focuses on the result of a defendant's conduct" like the assault offense found not to satisfy the elements clause in *Perez-Vargas*. 414 F.3d at 1285. Rather, it is more readily likened to the aggravated assault with a deadly weapon offense at issue in *United States v. Maldonado-Palma*, which required proof that a defendant "[e]mploy[ed] a weapon that is capable of producing death or great bodily harm . . . in an assault[,]" which the Tenth Circuit held "necessarily threatens the use of physical force" under the *Johnson I* standard. 839 F.3d at 1250 (10th Cir. 2016). Indeed, as discussed by the Magistrate Judge, the crime of aggravated assault at issue in *Maldonado-Palma* requires proof of all of the elements of assault with a dangerous weapon under 18 U.S.C. § 113. The only distinction between

18

the two offenses is that the federal statute requires the *additional* showing that the defendant specifically intended to inflict bodily harm on the victim. *See United States v. Johnson*, 967 F.2d 1431, 1433-36 (10th Cir. 1992), *abrogated on other grounds by Lewis v. United States*, 523 U.S. 155, 162-65 (1998).

Accordingly, the Court finds that the offense of assault with a dangerous weapon satisfies the elements clause of 18 U.S.C. § 924(c)(3) notwithstanding the Tenth Circuit's holding in *Perez-Vargas* and therefore overrules Petitioner's third objection.

## IV. CONCLUSION

Petitioner's offense of assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3) remains a "crime of violence" under the elements clause of *id.* § 924(c)(3). Petitioner's conviction under *id.* § 924(c)(1)(A) for using and brandishing a firearm during and in relation to a crime of violence therefore remains valid notwithstanding *Johnson II*'s applicability to the "substantial risk" clause contained in *id.* § 924(c)(3). The Court therefore agrees with the PFRD and adopts it in its entirety, and Petitioner's objections thereto are overruled.

Additionally, the United States' Response to Petitioner's § 2255 Motion (*doc. 7*) was styled as a motion to dismiss the petition. Therefore, based on the reasoning contained herein, that motion will be granted.

The Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A COA should issue "only if the applicant has

19

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant can satisfy this standard by demonstrating that the issues raised are debatable among jurists, a court could resolve the issues differently, or the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). After careful consideration of the issues raised in Petitioner's motion, the Court will deny a COA.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:

(1) Petitioner's objections (*doc. 12*) are OVERRULED;

(2) The Magistrate Judge's Proposed Findings and Recommended Disposition (*doc. 8*) is ADOPTED;

(3) The United States' Motion to Dismiss Petitioner's 28 U.S.C. § 2255 Motion to Correct Sentence (*doc. 7*) is GRANTED;

(4) Petitioner's Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255 (*doc. 1*) is DENIED and DISMISSED WITH PREJUDICE;

(5) A certificate of appealability is DENIED.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE